**ORIGINAL**

5⅃ ₅3⁰

1    <u>PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY</u>

2    Name __**ABRON**_____**KURT**_____**F**_____
         (Last)                (First)              (Initial)

3

4    Prisoner Number ____**K-82005**_____

5    Institutional Address __**CSP-SOLANO**_____
                              **P.O. BOX 400**
                              **VACAVILLE, CA 95696-4000**

6    ═══════════════════════════════════════════════════

7                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**

                                                            **SI**

8        **KURT ABRON**_____
     (Enter the full name of plaintiff in this action.)

9                                          **CV   08        2857**

                    vs.                    Case No. _____
10                                         (To be provided by the clerk of court)
         **D.K. SISTO**_____

11    _____            **PETITION FOR A WRIT**    **(PR)**
                                          **OF HABEAS CORPUS**
12    _____

13    _____

14    _____            *E-filing*
     (Enter the full name of respondent(s) or jailor in this action)

15

16    ═══════════════════════════════════════════════════

                    <u>Read Comments Carefully Before Filling In</u>

17    <u>When and Where to File</u>

18        You should file in the Northern District if you were convicted and sentenced in one of these

19    counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20    San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21    this district if you are challenging the manner in which your sentence is being executed, such as loss of

22    good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23        If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24    one of the above-named fifteen counties, your petition will likely be transferred to the United States

25    District Court for the district in which the state court that convicted and sentenced you is located. If

26    you are challenging the execution of your sentence and you are not in prison in one of these counties,

27    your petition will likely be transferred to the district court for the district that includes the institution

28    where you are confined. Habeas L.R. 2254-3(b).

1  Who to Name as Respondent

2       You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6       If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now and the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12         (a)   Name and location of court that imposed sentence (for example; Alameda

13             County Superior Court, Oakland):
           SAN FRANCISCO SUPERIOR

14             COURT                   SAN FRANCISCO

15             Court                     Location

16         (b)   Case number, if known   **159989**

17         (c)   Date and terms of sentence    **15 yrs to Life**

18         (d)   Are you now in custody serving this term? (Custody means being in jail, on

19             parole or probation, etc.)       Yes **X**   No _____

20             Where?

21             Name of Institution: _____ **CSP-SOLANO**

22             Address:   **P.O. BOX 4000, VACAVILLE CA 95696-4000**

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26     **2nd Degree Murder (P.C. 187)**

27

28

PET. FOR WRIT OF HAB. CORPUS     - 2 -

3. Did you have any of the following?

Arraignment:                                    Yes __X__    No _____

Preliminary Hearing:                            Yes __X__    No _____

Motion to Suppress:                             Yes __X__    No _____

4. How did you plead?

Guilty _____    Not Guilty __X__    Nolo Contendere _____

Any other plea (specify) __INSANITY PLEA__

5. If you went to trial, what kind of trial did you have?

Jury __X__    Judge alone __X__    Judge alone on a transcript _____

6. Did you testify at your trial?                Yes __X__    No _____

7. Did you have an attorney at the following proceedings:

(a)    Arraignment                              Yes __X__    No _____

(b)    Preliminary hearing                      Yes __X__    No _____

(c)    Time of plea                             Yes __X__    No _____

(d)    Trial                                    Yes __X__    No _____

(e)    Sentencing                               Yes __X__    No _____

(f)    Appeal                                   Yes __X__    No _____

(g)    Other post-conviction proceeding         Yes _____    No __X__

8. Did you appeal your conviction?              Yes __X__    No _____

(a)    If you did, to what court(s) did you appeal?

Court of Appeal                         Yes __X__    No _____

Year: __1999__    Result: __denied__

Supreme Court of California             Yes __X__    No _____

Year: __2000__    Result: __denied__

Any other court                         Yes __X__    No _____

Year: __2001-04__    Result: __denied__

(b)    If you appealed, were the grounds the same as those that you are raising in this

| | | | |
|---|---|---|---|
| 1 | | petition? | Yes _____ No _X_ |
| 2 | (c) | Was there an opinion? | Yes _____ No _X_ |
| 3 | (d) | Did you seek permission to file a late appeal under Rule 31(a)? | |
| 4 | | | Yes _____ No _X_ |

If you did, give the name of the court and the result:

_____ N/A _____

_____ N/A _____  .

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?                Yes _____ No _X_

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

(a)     If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.     Name of Court: _____ N/A _____

Type of Proceeding: _____ N/A _____

Grounds raised (Be brief but specific):

a. _____ N/A _____

b. _____ N/A _____

c. _____ N/A _____

d. _____ N/A _____

Result: _____ N/A _____ Date of Result: N/A _____

II.     Name of Court: N/A _____

Type of Proceeding: _____ N/A _____

Grounds raised (Be brief but specific):

a._____**N/A**_____

b._____**N/A**_____

c._____**N/A**_____

d._____**N/A**_____

Result:_____**N/A**_____Date of Result:___**N/A**_____

III.  Name of Court:_____**N/A**_____

Type of Proceeding:_____**N/A**_____

Grounds raised (Be brief but specific): **N/A**

a._____**N/A**_____

b._____**N/A**_____

c._____**N/A**_____

d._____**N/A**_____

Result:_**N/A**_____Date of Result:__**N/A**_____

IV.  Name of Court:_____**N/A**_____

Type of Proceeding:_____**N/A**_____

Grounds raised (Be brief but specific):

a._____**N/A**_____

b._____**N/A**_____

c._____**N/A**_____

d._____**N/A**_____

Result:_____**N/A**_____Date of Result:__**N/A**_____

(b)  Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____  No **X**___

Name and location of court:_____**N/A**_____

## B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to support each claim. For example, what legal right or privilege were you denied? What happened? Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

1  need more space. Answer the same questions for each claim.

2      [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One:    **No Evidence to support the Parole Board's**

6  ~~finding that Petitioner posed a danger to the public.~~

7  Supporting Facts:    Board stated that I didn't have enough

8  self-help programs, and also that I lacked realistic

9  Parole Plans. (See Attached)

10

11  Claim Two:    **Penalty statute with its credit provisions**

12  **creates pre-expiration liberty interest for release.**

13  Supporting Facts:    **P.C. 190 mandates application of 2931 credit**

14  **to term limit, and Maximum Parole Date has been exceeded.**

15  **(See Attached)**

16

17  Claim Three:    **Parole consideration criteria and Guildline**

18  **are unconstitutional**

19  Supporting Facts:    Factors listed in the catagory are the same

20  elements and factors that were needed to obtain conviction

21  Also District Attorney presented evidence not in record

22  and stated facts which resuled in conviction, Double ~~Jeopardy.~~

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:    Previous Appeal was a direct Appeal

25  from conviction, this is from a denial from the Parole Board.

26

27

28

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    McQuillion v. Duncan 306 f.3d, at 895(2002);

5    People v. Buckhalter 26 Cal.4th, at 20(2001)

6    In re Bradford O. Bryant(Court of Appeal) Fourth Appellate

Superior Court #CR49119

7    Do you have an attorney for this petition?                    Yes_____          No_X_

8    If you do, give the name and address of your attorney:

9    _____N/A_____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on _May 26 2008_                    _Hut F. Alren_

14                    Date                                Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

Petitioner's recent Hearing, April 19, 2007, the Panel said that·
the crime was carried out in a brutal and vicious manner, and also
that the Petitioner demostrated excepionally callous disregard for
human suffering. Petitioner argues that at this Hearing, the abused,
mutilated, or defiled was corrected, and deleted, which was a major
reason for the initial denial. This subsequent hearing confirmed that
the victim was not stabbed with an sharp-edged knife, as was reported.

Petitioner argues that the Panel relied on these circumstances
in Aggravation to deny Petitioner Parole consideration,

## HISTORY

Petitioner was convicted on April 1, 1997 of Murder, of the
second degree. Petitioner's initial Parole Hearing was held on Feb-
(ruary) 24, 2004. Petitioner was given a three-yr denial for the (3)
factors in Aggravation. Petitioner's recent Hearing resulted in a (2)
yr denial from one factor in 2402(d), that the offense was carried out
in a manner which demostrated an exceptionally callous disregard for
human suffering, was the lone factor in the Circumstances to show that
Petitioner was unsuitable for Parole release.

Petitioner argues that the Panel failed to rely on the fact that
it ignored #14 in circumstances to show in aggravation, how a person
can intentionally kill a victim by administration of poison. Petitioner
was intentionally poisoned by the victim, which makes this case unique.

The Panel also didn't consider facts in Mitigation, that this was
committed during an unusual situation unlikely to reoccur, and that the
crime was committed during a brief period of extreme mental or emotional
trauma. One prior arrest for misdemeanor corporal injury, and a Police
Report from the Oakland Police, with no arrest was also submitted, and
used to deny Petitioner Parole.

Petitioner argues that this incident arose from a ten-yr marriage
that was filled with infidelity and abuses of the verbal, and least once,
physical nature. Petitioner contends that on the night of June 4, 1994,
after being poisoned for several days prior, Petitioner asks the victim
for possible assistance to be taken to the hospital for an illness that
he couldn't determine the cause of. After refusing the Petitioner, the
victim requested money to leave with another man, the Petitioner refused,

(1)

then in an effort to bring another person into the situation, the Petitioner bent down to use a telephone that was on the floor, while stating to the victim that"all I wanted was for you to help me", the victim responded by saying" I'll help you", and struck the Petitioner on the right side of his head, leaving a two-inch indentation, that is still present today.  The victim was standing over the Petitioner, and before another blow could be admistered, Petitioner struck the victim on the lower left jaw area, making the victim fall into the dresser, and striking the right side of her head on the dresser, which caused the multiple injuries. Unknown to the Petitioner at the time, he was suffering from a myicardial infraction(heart attack). The Petitioner helped the victim to the side of the bed, went to get ice-paks for the swelling, and left for the hospital, with no idea of the extent of the victims injuries. Petitioner got into his car, and proceeded to the hospital, but passed-out, and awoke (3) days later.

ARGUMENT

California inmates serving indeterminate life terms have a liberty interest protected by the U.S. Constitution. In re Rosenkrantz 29 Cal.4th at 616(2002); McQuillion v. Duncan 306 f.3d, at 895(2002); In re Danenberg 34 Cal. 4th, at 1061(2005); Sass v. Board of Prison Terms 461 f.3d, at 1123(9th Cir 2006).

The touchstone of due process is the protection of the individual against arbitary government action. Dent v. West Virginia 129 U.S. at 114 (1899); Wolff v. McDonnell 418 U.S. at 539(1974); Daniels v. Williams 474 at 327(1986).

Parole decisions which lack evidence to support them are arbitrary and thereby violative of the Due Process Clause of both the California and Federal Constitutions. See Cal Const, Article 1,7; U.S. Const 14; Also See In re Powell 45 Cal.3d, at 894(1988); In re Rosenkrantz, supra at 654; McQuillion v. Duncan, supra at 903-906.

Certainly this killing was no more cruel or callous than those found not to support Parole denial in other cases. See In re Elkins 144 Ca App.4th, at 475(2006); Rosenkrantz v. Marshall 444 F.Supp.2d, at 1063, (C.D. Cal,2006).

Assuming (without conceding) that Petitioner was a danger to the community at the time of his incarceration,"[the passage of time itself diminish the validity of an assumption that Ca prisoner's]" dangerousness continues unabaited.; In re Holferber 28 Cal.3d, at 161(1980); Also See In re Lee 143 Cal.App.4th at 1400(2006).

The BPT has on this second occasion, used Petitioner's crime as the primary basis to deny Parole. Petitioner argues that the erosion of the predictive value of violence based on long ago past actions has been now recognized in numerous parole cases, particularly when there is no history of violence, and good long-term instutional behavior. See In re Lee 143 Cal.App.4th, at 1400(2006); In re Scott 133 Cal.App.4th, at 573(2005); In re Elkins, supra; In re Smith 114 Cal.App.4th, supra at 366; Martin v. Marshall 431 F.Supp2d, at 1038(N.D. Cal 2006) ; Irons v. Warden 358 F.Supp 2d, at 936(E.D. Cal 2005)(under appeal 05-15275 9th Cir); Hudson v. Kane 2005 WL2035590(N.D. Cal)(unpublished).

Petitioner has a minor history, with a misdemeanor conviction for corporal battery against the victim.

The repeated crime based parole denial have now risen to the type of due process violation, which the Court in Biggs v. Terhune warned of

That Biggs v. Terhune 334 f.3d, at 910(9th Cir 2003) discussed the theory that continuing parole denial based on a unchanging fact, like the fact of the offense, "would raise serious questions involving[a prisoner's] liberty interest in parole". Id at 913.


Circumstances Tending to Show Suitability

The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guildlines; the importance attached to any circumstances or combination of circumstances in a particular case is left to the judgement of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. Petitioner has no record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
(2) Stable Social History. Petitioner has experienced reasonably stable relationships with others.
(3) Signs of Remorse. Petitioner has preformed acts which tend to indicate the presence of remorse, attempting to repair the damage by written letter to try and open a line of communications with the family. Petitioner also understands the nature and magnitude of the offense.
(4) Motivation for Crime. The Petitioner committed this crime as a result

(3)

significant stress in his life, especially if the stress had built up over a long period of time.
(5) Lack of criminal history. Petitioner has a misdemeanor conviction for corporal battery.
(6) Age. The Petitioner's present age reduces the probability of re-cidivism.
(7) Understanding and Plans for Future. The Petitioner has made realistic plans for release, and has developed marketable skills that can be put to use upon release.
(8) Institutional Behavior. Petitioner's institutional activities indicate an enhanced ability to function within the law upon release.

Authority cited: Sections 3041, 3052, and 5076.2 Penal<br>Reference: Sections 3041 and 4801, Penal Code

Petitioner has received approximately (7) 128's minor rule violation's for not going to school, after the Petitioner had completed the Vocation, he was written-up seven times for not coming to a class that he had completed

The Board's rules's also state that it is within their judgment the importance or weight attached to any circumstance or combination of circumstances. However, this does seem to indicate that the Board can shift their preference. (See CCR 2402)(c), and (d). As one Court put it,"predetermind conclusion in search of a justification, supported by little more than make-weight rationalization for the[denial]'." (In re Caswell, supra, 92 Cal. App.4th, at 1030.

Except for questions as to whether Petitioner's disciplinaries should deprive him of a Parole release date, Petitioner meets the factors indicat-(ing) suitability for Parole. Nevertheless, factors of unsuitability must be considered.

CCR 2402(c) Circumstances Tending to Show Unsuitability. The follow-(ing) circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guildlines: the import-(ance) attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circum-stances tending to show unsuitability include:

(1) Commitment offense. The Petitioner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be con-sidered include:
Subdiv. (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
The circumstances of the offense does not include multiple victims.

Subdiv. (B) The offense was carried out in a dispassionate and cal-culated manner, such as an excution-style murder.

(4)

Petitioner was convicted of second degree murder.  Under California law, second degree murder requires express or implied malice-i.e., the perpetrator must kill another person with the specific intent to do so, or must preform the act intentionally, knowing it is dangerous to life and with conscious disregard for life. (P.C. 187-189; See CALJIC No. 8.11),

In the present offense, Petitioner committed this murder in the heat of passion or in the heat of the moment, (Id.) This is more of an impluse killing. There is no planning or thought as to how to this murder was to take place.

Subdiv. (C) The victim was abused, defiled or mutilated during or after the offense.

The panel holds that hitting the victim means that the victim was abused during this offense. However, it can be argued that it constitutes assault.. Petitioner's acts were in the heat of the moment without any deliberation. This subsequent hearing concluded that the Petitioner didn't inflict any stab wounds with any weapon, as was recorded at the initial hearing, so this subdiv(C) was not used as a factor in refusing parole. Petitioner does argue that the SF District Attorney continued to insist that the victim was wounded with an knife, despite the fact that no such injury exists on the Medical Examiners report.

Subdiv. (D) The offense was carried out in a manner which demostrates an exceptionally callous disregard for human suffering.

The panel concluded that the offense demostrates an exceptionally callous disregard for another human being. Petitioner argues that the panel has not put forth evidence that the manner in which Petitioner committed his offense was meant to inflict suffering upon the victim. There is no evidence Petitioner calculated or planned out the events beforehand and then carried them out. Was the crime callous? Yes. Nevertheless, a conviction for second degree murder requires that the perpetrator must kill another person with the specific intent to do so, or must preform the act knowing it is dangerous to life and with conscious disregard for life. (P.C. 187-189; See CALJIC No. 8.11). Has the Board established that the circumstances of this crime evidences Petitioner acted in an espeially cruel and callous manner? No. "[A]ll second degree murders by definition involve some callousness. (In re Smith, supra, 114 Cal. App.4th, at 366).

The circumstances of this case is not demostrative of exceptionally

callous disregard for life.

       Subdiv. (E) The motive for the crime is inexplicable or very trivial in realtion to the offense.

The panel claims the crime is inexplicable, but unable to explain its conclusion.

       Subdiv. (2) Previous Record of Violence. The Petitioner on previous ocasions inflicted or attempted to inflict serious injury on a victim, particularly if the Petitioner demostrated serious assaultive behavior at an early age.

Petitioner in this present case has one misdemeanor conviction for corporal injury.

       Subdiv. (3) Unstable Social History. The Petitioner has a history of unstable or tumultuous relationships with others.

There is nothing in Petitioner's social history to suggest he has difficulty relating to others in a positive manner.  However, the panel concludes that the Petitioner did not have an unstable social history.

       Subdiv. (4) Sadistic Sexual Offense. The Petitioner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

Petitioner in the present case before the Court, has no history of any form of sexual criminality.

       Subdiv. (5) Psychological Factors. The Petitioner has a lengthy history of severe mental problems related to the offense.

Petitioner in this present case before the Court, has no history of mental problems or any forms of psychological problems relating to the present offense or otherwise.

       Subdiv. (6) Institutional Behavior. The Petitioner has engaged in serious misconduct in prison or jail.

Petitioner has accumulated (7) 128's minor violations for not going to a class that I had completed. Petitioner argues that the only circumstances presenting questions is whether Petitioner's disciplinaries while incarcerated outweigh all the factors demostarating that he is suitable for Parole, according to the Board's own suitability and unsuitability rules.

In the case of In re Leslie Van Houten, supra, at p. 358, the Court noted that she sustained no disciplinaries while incarcerated, but the gravity of her offense outweighed her exemplary institutional behavior and Parole prospects. (Id.)  Similarly, the lack of circumstances tending to indicate unsuitability for parole with the totality of circumstances

indicating suitability for parole should outweigh Petitioner's insti-
tutional disciplinaries.

Petitioner contends that the nature of an offense alone can con-
stitute a sufficient basis for denying parole. (In re Rosenkrantz,supra,
29 Cal. 4th at pg 682). However, the authority to make an exception based
on the gravity of the offense or offenses "[cannot] operate so as to
swallow the rule that parole is normally to be granted". (In re Ramirez
supra, at pg 570; In re Rosenkrantz, supra,29 Cal.4th, at 683,).[P]arole
is the rule, rather than the exception. (In re Smith, supra, 114 Cal.App.
4th, at 366). Nevertheless, it has been demostrated that repeated multi-
year denials of parole and the culmination of the no parole policy swallowed
the "shall normally " rule.

The record of the Hearing reveals a "predetermined conclusion in search
of a justification, supported by little more than makeweigh rationalizations
for the decision." (In re Caswell 92 Cal. App. 4th, at 1017(2001)  The
Board has provided no perspective or procedures establishing a substantial
due process by which similar offenses were compared and the record of the
meeting does not disclose any evidence that Petitioner's offense was com-
pared against any offenses occurring under similar circumstances. Ultimately
even using the Board's own matrix criteria of victims and circumstances does
not reveal or establish this case as an exception to the rule.

(See .Exihibits in the Exihibits Section)

(7)

PENALTY STATUTE WITH ITS CREDIT PROVISIONS CREATES A
PRE-EXPIRATION LIBERTY INTEREST; AND BOARD LACKS THE
DISCRETION TO PROMULGATE REGULATIONS THAT ARE  TO BE
INCONSISTENT WITH THE GOVERNING STATUTES

The CDC has the authority to set a "maximum" parole date. The inmate
has a liberty interest in his parole. The laws of the State of California
establish that the CDC possesses the authority to set that parole.
The task of term fixing and setting parole are two separate and distinct
functions. In re Rodriguez 14 Cal.3d, at 639(1975)

It cannot be assumed that simply because a defendant is sentenced to
25 years to Life, that the maximum sentence will automatically be life.
In re Jeanice D 28 Cal.3d, at 210(1980) Petitioner argues that Jeanice
and Rodriguez mandates that in order to comply with the Eighth Amendment
prohibition against cruel and unusual penalities, a finite maximum of
sentence must be set. To do otherwise, would be to impliedly set a maximum
of life in every case, which is improper, as it does not take into account
the specific characteristics of the defendant.

The CDC has every right, under California law, to exercise its dis-
cretion and set Petitioner's maximum parole date. The language of People
v. Buckhalter 26 Cal.4th, at 20(2001), supports that position. In Buckhalter
at pages 38 and 39, the California Supreme Court acknowledged that under
California law, the Department of Corrections has the responsibility of
calculating credits for inmates. The CDC was acting under just that authorit
and province when it determined the Petitioner's maximum eligible parole
date.

Furthermore, California law makes it very clear that any ambiguity
in the interpretation of any statute must be interpreted in favor of the
inmate. (People v. Cooper 27 Cal.4th, at 38(2002). In Cooper, the Court
acknowledged that there was ambiguity in the interpretation of Proposition
7,(the Briggs initiative,under which the Petitioner was sentenced), and
determined that any ambiguity should be construed" as favorable to the
defendant, as the circumstances and language may reasonable permit.

Therefore, Petitioner relied upon that date of release as well as
continued to work to earn his credits. The CDC's conduct created an expect-

(ancy) of release, thereby creating a specific liberty interest protected
under the Due Process Clause of the United States Constitution.(Greenholtz
v. Nebraska Penal Inmates(197) 442 U.S.

A reasonable entitlement to due process is not merely because a State
provides for the possibility of parole, however where a statute create an
"expectation of parole", it becomes protected by the Due Process Clause.
(Greenholtz at pages 11. Also see Board of Pardons v. Allen 482 U.S. at 369
(1987), and Wolff v. McDonnell 418 U.S. at 459(1974), Although the process
of the CDC setting a maximum and minimum parole date differs from the BPT's
process of setting a release date for an inmate, the expectation of parole
remains the same. Whichever entity sets the date, the inmate is going to rely
on the date that is set.

Petitioner was sentenced under PC 190, which was added by the public
at the November 7, 1978 General Elections. Petitioner argues that his mini-
mum eligible parole date is established by statute. The amount of good con-
duct credit that a prisoner sentenced to first or second degree murder may
earn to reduce the minimum eligible parole date is established by statute.
(Penal Code Sections 2930-2933).

PC 190 plainly mandates application of PC 2931 credits by the CDC
against the mimimum term of imprisomment of 25 or 15 years imposed by statute
respectively.   The BPT's construction of the statute imposing and reducing
minimum eligible parole dates of 25 or 15 years is not consistent with the
plain language of the statute. It states that the CDC will determine the
minimum eligible parole date.

CDC's subtraction of the total amount of behavior and participation
credits from the minimum sentence, imposed by statute, establishes an antici-
pated good-time release or minimum eligible parole release date(MEPRD).

Petitioner argues that under existing law, the BPT's authority to ex-
ercise discretion, under PC 3041, in determining whether a prisoner is suit-
able for parole is an aspect of the power to grant such a parole date pur-
suant to PC 3040. PC 3040,3041,3041.5 and 3041.7 each define phases of a
single coherent procedure. PC 3040 creates the power to grant, and derivati-
vely, the powers to deny parole release date. PC 3041 establishes the times
within which such powers may be exercised and the mode of their exercise.

Under PC 3041, the BPT has no power to exceed the authority conferred
under PC 3040. Pursuant to PC 5, the power of PC 3040 is a continuation of

(9)

former PC 3040, and not as a new enactment. Petitioner argues that the BPT has no authority or discretion, pursuant to PC 3041, to determine or redetermine the minimum term of 25 or 15 years imposed and reduced by PC 190(a).

Petitioner argues that PC 190 is an initiative measure which cannot be modified by subsequent legislative enactments not having the requisite majority for altering a voter initiative. (See In re Oluwa, 207 Cal.3d, at 439, also, Cal. Const., art II, 10, subd.(c). It follows that these provisions may not be modified by the subsequently enacted regulations of the Board providing an entirely different credit and sentencing scheme.

The Board's regulation's applied to Petitioner do not distinguish Petitioner's minimum term of imprisonment decreased pursuant to the article 2.5 credit provisions, in PC 190 subd. (a), from its regulatory definition minimum eligible parole date(MEPD). The Board's regulations state that the CDR&R authority under PC 190 subd.(a) to reduce Petitioner sentence is different from its regulatory credit provisions [that the Petitioner has no right to acquire] and do not affect its discretion to consider parole release under PC 3041. (See In re Griffin 63 Cal.2d, at 757(1965): distinguishing Minimum Term from MEPD.

Petitioner argues that the BPT's construction of the CDC's duty to reduce the fixed minimum terms of imprisonment, imposed by PC 190(a), usurps the statutory operations of the measure by altering and enlarging the scope of its authority and amending PC 190(a) in applying a standard of credit that extends the length of time a prisoner must serve before being eligible for release. PC 190 is an initiative measure which cannot be modified by subsequent legislative enactments not having the requisite majority for altering a voter initiative. (Cal Const. art.II, 10, subd.[c]: By constitutional mandate, an initiative can be amended only upon approval of the voters.)

Petitioner argues that the BPT's system of post-conviction credits under the rules it applies, amends PC 190(a) by extending the time a prisoner must serve before being eligible or actually released. Under BPT rules, a prisoner convicted of first or second degree murder is not actually eligible for parole until they have served the 15 CCR matrix base term appropriate to the offense, as established by the  BPT,

which ranges from 15 to 21 years for a second degree murder offense, and
25 to 33 years for a first degree murder offense. With application of
average credits to these Matrix Base Terms for first and second degree
murder offenses, the shortest period of confinement before being eli-
gible for release is 11.38 to 16.04 years for a second degree murder
offense, and 18.81 to 24.81 years for a first degree murder offense.
While under PC 190(a) second degree murder is eligible for release in
10 years and first degree murder until 16.8 years.

Petitioner argues that when language which is reasonably susceptible
of two constructions is used in a penal law, ordinarily that construction
which is more favorable to the offense will be adopted[citation]. The de-
fendant is entitled to the benefit of every reasonable doubt, as to the
true interpretation of words or the construction of language used in a
statute. (People v. Smith 44Cal.2d, at 77(1955)[279 P. 2d, at 33] See e.g.
People v. Superior Court(Douglass)(1979) 24 Cal.3d, at 428[155 Cal Rpt.
at 704, 595 P.@d, at 139].

Petitioner argues that under existing law, the indeterminate sentenc-
(ing) provision PC 1168(b) has been substantially amended, which invokes
the principles of PC 5, thereby invalidating the BPT's utilization of its
power in In re Lee 177 Cal.at 690(1918) and People v. McNabb 3 Cal.2d, at
441, rules that held the indeterminate sentence is in legal effect a sen-
tence for he maximum term. For the BPT to hold these rules still in effect,
would raise both due process and equal protection concerns in the BPT not
applying these rules to prisoners under Articles 6 and 7 of these regula-
tions of chapter 3. Parole Consideration Procedures and Criteria and Guild-
lines for ISL Prisoners.

Petitioner contends that the BPT's interpretation that a Life sentence
may be imposed for an offense of first or second degree murder sentenced
under PC 190, which prescribes a punishment of confinement in the state
prison for a term of 25 or 15 years to Life, respectively, (after Nov 7,
1978),conflicts with the provisions of exsisting law. PC 1168 provides
that the sentencing courts in imposing the sentence shall not fix the
term or duration of the period of confinement, while PC 190(a) plainly
mandates application of PC 2931 credits by the CDC against the minimum
terms of 15 or 25 years imposed by statute, nothing in the PC purports

to authorize the BPT, pursuant to PC 3041, to impose a Life sentence. The BPT's powers and duties have been substantially amended or repealed. The power the BPT had to establish parole length is something they have no more. Petitioner argues that the length of parole is statutorily set, PC 3000 et seq, but reincarceration on revocation of parole is statutorily limited to one year(PC 3057). The BPT has no authority to grant or deny parole to a prisoner serving a determinate sentence pursuant to PC 1170 et seq. Petitioner adds that the BPT may not impose on parole any conditions that it may deem proper. See PC 3053. The former duties incumbent upon the parole authority, under PC 5077 requiring the Board to fix sentences, classify the prisoner and determine the prison in which he or she shall be confined was amended. The PC 3020 et seq and 2940 et provided that the parole board my determine and redetermine what length of time prisoners sentenced under the provisions of PC 1168 shall remain in prison was repealed. There is nothing in the exsisting PC evidencing an intent to re-establish those powers for first or second degree murder sentenced under PC 190. The BPT is no longer a component part of the CDC. (Former PC 5000-5003,5075,4810).

Petitioner argues that the BPT misinterprets the fact that the CDC applies PC 2931 credits to the minimum term of imprisonment of 15 or 25 years, which establishes the prisoner release date. The BPT's construction conflicts not only with the explicit language of the statute, but finds no support in any relevant legislative history.

Petitioner argues that determining whether the Board's regulation's have deprived Petitioner of a procedurally protected "liberty", the United States Supreme Court traditionally has looked either(1) to the nature of the deprivation(how severe, in degree or kind) or (2) to the State's rules governing the imposition of the deprivation(whether they, in effect, give the inmate a "right" to avoid it). See e.g. Kentucky Dept of Corrections v. Thompson 490 U.S. at 454(1989).

Petitioner contends that he is entitled to a timely determination of his sentence. See In re Mills 55 Cal.2d, at 653(1960); also In re Ward 227 Cal.App.2d, at 369(1964).

Petitioner argues that credits applied for good behavior and partici-pation pursuant to the provision of PC 190, subd. (a), article 2.5 are operative and attaches and limit the term of imprisonment imposed by statute The facts are that the Petitioner's sentence was indeterminate when the

(12)

trial judge rendered the sentence, thereafter, when the CDCR(formerly the Department of Corrections) applied the credits to his statutorily imposed minimum term of imprisonment, the sentence which was therefore indeterminate became determinate. See In re Smith 103 Cal.App. at 749 (1930); and In re Daniels 106 Cal.App,at 43(1930).

In People v. Olivas 17 Cal.3d, at 236(1976), our Supreme Court declared that liberty is a fundamental interest and that classifications dealing with it must satisfy the strict scrutiny test. See generally Johnson v. California 125 S. Ct. at 1141,(2005).

Petitioner argues that Proposition 7 provides Petitioner that right by the CDC&R application of the credit provisions to his minimum term of imprisonment imposed by statute. Equal Protection demands that Petitioner be afforded the same treatment as those inmates in the Board's regulations under Articles 6 and 7, chapter 3, 15 CCR 2300-2329(a)-(o).

> PETITIONER HAS A GENERAL AND A SPECIFIC LIBERTY INTEREST
> PROTECTED BY THE DUE PROCESS CLAUSE OF THE UNITED STATES
> CONSTITUTION

The Petitioner's due process rights were violated because he was improperly deprived of his liberty interest in parole. A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of a adequate procedural protections, See Brewer v Board of Eduation of Lynwood Unified School District 149 f.3d, at 971(9th Cir 1988), citing Davis v. Scherer 468 U.S. at 183 104 S.Ct. at 3012, 82 L.Ed.2d, at 139(1984); Gilbert v. Homar 520 U.S. at 924, 75 S.Ct. at 1807, 138 L.Ed.2d, at 120(1997) ; Board of Regents v. Roth 408 U.S. at 564, 92 S.Ct. at 2701, 33 L.Ed.2d, at 548(1972).

The Supreme Court has prescribed a rule which provides that California prisoners have a cognizable liberty interest in release on parole. The governing rule in this area was articulated by the Supreme Court in Greenholtz v. Inmates of Nebraska Penal, 442 U.S. at 1(1979) and Board of Pardons v. Allen 482 U.S. at 369(1987). Greenholtz and Allen established that while there is no constitutional or inherent right of a convicted person to be conditionally released before the expriation of a valid sentence, Greenholtz 442 U.S. at 7, a state statutory scheme if it uses mandatory language creates a presumption that parole release will be granted when or unless certain designated findings are made and thereby gives rise to a constitutional liberty interest. Id at 72; Allen 482 U.S. at 377

(13)

Petitioner contends that the Court in McQuillion I determined that California parole scheme uses mandatory language and is largely parallel to the schemes found in Greenholtz and Allen which give rise to such interest, and therefore the rule enunciated by the U.S. Supreme Court in Greenholtz and Allen is applicable in California.

The Court in McQuillion I also found that though it had never before held that California parole scheme created a protected liberty interest, they had repeatedly assumed that it did, citing Powell v. Gomez 33 F.3d, at 40(9th Cir 1994); Perveler v. Estelle 974 f.2d, at 1132(9th Cir 1992).

Having established that an inmate in McQuillion I had a general interest protected by the U.S. Supreme Court Due Process Clause, and concluding that nothing more was needed in order to meet the "liberty interest analysis", the Court went on to determine that McQuillion's position as a prisoner who had already been granted a parole date heightens that interest in this case creating a specific expectation.

The facts in McQuillion I are analogous to the facts in this case, just as with the Petitioner in McQuillion I, the CDC conduct credit creates a specific expectation for the Petitioner herein. See Kelch v. Director Nevada Dept of Prisons 10 f.3d, at 684(9th cir 1993).

Even though the Petitioner in the instant writ was given his minimum and maximum parole dates by the CDC, the Petitioner in McQuillion was given his parole date by the BPT, the expectation in parole is the same.

In McQuillion the BPT gave Petitioner a parole date which would be moved closer with the application of any credit that Petitioner would earn. The same is true in the instant writ. The Petitioner was given minimum and maximum parole dates that would move closer with the application of any credits that the Petitioner would earn. Just as McQuillion relied on the Parole date that the BPT had set for him, so did the Petitioner rely on the dates that the CDC had set for him, because Petitioner was repeatedly given a parole date, he has both a heightened interest and specific expectation of parole.

(14)

PETITIONER'S PROTECTED LIBERTY INTEREST
HAS BEEN DENIED FOR LACK OF DUE PROCESS

Having established the Petitioner has a constitutionally protected liberty interest, the Court should next examine whether the deprivation of that interest lacked adequate procedual protections and therefore violated due process. See Brewster, 149 f.3d, at 982. It has been held that the process that is due before a prisoner can be deprived of such an interest is a showing that there is "some evidence" in the record to support a later recision of that date. McQuillion at 898.

Due Process in this case would be the creation of a hearing system where the Petitioner would receive (a) written notice (b) disclosure of evidence on which the decision will be based (c) the opportunity to be heard in person and to present evidence (d) which would be decided by a neutral and detached hearing body and (e) a written statement by the fact finder as to the evidence relied on. See McQuillion I and also Morrissey v. Brewer 408 U.S. at 445(1985); Also See Jancsek v. Oregon Board of Parole 833 f.2d, at 1387(9th Cir 1987).

None of these rights were afforded to Petitioner. Having determined that Petitioner's Maximum Eligible Parole Date was  August 17, 2007, no hearing has been held wherein Respondent has concluded that the date should or had been rescinded. California does have a"parole" recision system which has been evaluated,(Jancsek v. Oregon Board of Parole 833 f.2d, at 1387 9th Cir 1987), but it was not utilized in this case.

(15)

## PAROLE CONSIDERATION MATRIX CRITERIA
## AND GUILDLINES ARE UNCONSTITUTIONAL

Petitioner argues that the BPT's redundant use of the elements and factors that were needed to obtain the conviction for second degree murder are used unconstitutionally, and continue to place the Petitioner in a state of Double Jeopardy.

Petition contends that the criteria and guildlines used by the BPT are unconstitutional. Petitioner's Calculated worksheet(See Exhibits), indicates that his maximum eligible parole date was Aug 17, 2007. Petitioner was sentenced to a term of 15 years to Life. The calculated date which was generated by the CDC&R, by statute, reflects that the Petitioner was given an additional (3) years, which reflects the middle catagory in the Title 15 Guildlines. These factors listed in the catagory are the same elements and factors that were needed to obtain the second degree conviction

> a.) Death was almost immidiate or resulted at least partially from contributing factors from victim.
> b.) Victim initiated the struggle or had goaded the prisoner.
> c.) Death resulted from severe trauma.

Petitioner contends that the actual factors added to the Matrix to comprise the added (3) years are unknown, but are being used redundantly to deny the Petitioner parole, and under the new rule from the United States Supreme Court held in Blakely 542 U.S., 159 L.Ed.2d, at 403, 125 S.Ct. at 2531(2004) ; Jones v. U.S. 526 U.S. at 227, 199 S.Ct. at 1215, 143 L.Ed.2d, at 311 ; Apprendi v. New Jersey 530 U.S. at 466, 120 S.Ct. at 2348, 147 L.Ed 2d, at 435; Ring v. Arizona 536 U.S. at 584, 122 S.Ct. at 2428, 153 L.Ed.2d, at 556; and Cunningham v. California

(b.) Petitioner argues that the same factors combined, resulted in a conviction for second degree murder, were again used to deny parole suit-ability,, and has placed the Petitioner in Double Jeopardy.

(c.) Petitioner argues that under 2404 of the Title 15 Guildlines, the role of the prosecutor is to comment on facts of the case and present an opinion about the appropriate disposition. And in making comments, supporting docu-mentation in the file should be cited. Petitioner argues that the prosecutor presented arguments not in evidence. See Berger v. U.S. 295 U.S. at 78, 79 L.Ed. at 1314(1934).

EXHIBITS

## CERTIFICATE COURSES BEFORE INITIAL PAROLE HEARING

|  |  | THERAPY HOURS |
|---|---|---|
| OCT. 19, 1998 | LIFE PLAN FOR RECOVERY | 120 HRS |
| AUG. 25, 1999 | FRAMEWORK FOR RECOVERY | 120 HRS |
| JAN. 26, 2000 | LIFE WITHOUT A CRUTCH | 120 HRS |
| JUN. 12, 2000 | 7 HABITS OF HIGHLY EFFECTIVE PEOPLE | 120 HRS |
| JAN.-DEC.2000 | AA | |
| JAN. 15, 2001 | HOUSES OF HEALING ANGER MANAGEMENT | 120 HRS |
| MAR. 27, 2002 | SUBSTANCE ABUSE COURSE | 40 HRS |
| APR. 25, 2002 | CREATIVE CONFLICT RESOLUTIONS | 40 HRS |
| JUL. 13, 2002 | ANGER MANAGEMENT PROGRAM | 40 HRS |
| FEB. 02, 2003 | CRIMINON-WAY TO HAPPINESS | 40 HRS |

## CERTIFICATE COURSES AFTER INITIAL PAROLE HEARING

|  |  |  |
|---|---|---|
| SEPT. 11, 2004 | CRIMINON-HANDLING DRUGS COURSE | 40 HRS |
| JAN. 23, 2005 | CRIMINON-SUCCESSFUL PARENTING COURSE | 40 HRS |
| FEB. 2005 | ADDICTIVE BEHAVIOR | 40 HRS |
| APR. 23, 2005 | CRIMINON-THE LEARNING EMPOWERMENT COURSE | 40 HRS |
| JUN. - 2005 | BEAT THE STREETS RECOVERY REHABILIATION | 40 HRS |
| JUN. - 2005 | WHO MOVED MY CHEESE TRAINING | 40 HRS |
| JUN. 21, 2005 | ETHICAL DECISION MAKING RELATIONSHIP | 40 HRS |
| NOV. 03, 2005 | CRIMINON- THE HANDLING SUPRESSION COURSE | 40 HRS |
| JAN. 04, 2006 | ANGER MANAGEMENT COURSE CREATIVE OPTIONS | 40 HRS |
| FEB. 10, 2006 | CRIMINON THE COMMUNICATION TOOLS COURSE | 40 HRS |
| JUL. 03, 2006 | CRIMINON-THE PERSONAL INTEGRITY COURSE | 40 HRS |
| JAN. 17, 2007 | CRIMINON-THE CONDITIONS OF LIFE COURSE | 40 HRS |
| JAN.-DEC. 2006 | AA/NA | 40 HRS |
| JAN. 17, 2007 | CRIMINON-THE CONDITION OF LIFE COURSE | 40 HRS |
| | TOTAL | 1280 HRS |

## VOCATIONAL PROGRAMS COMPLETED

| | | |
|---|---|---|
| JUN. 28, 2002 | VOCATIONAL SHOE REPAIR | |
| DEC. 11, 2003 | AIR CONDITIONING AND REFRIGERATION | |
| AUG. 17, 2004 | VOCATIONAL LANDSCAPINT | |
| JAN. 27, 2007 | OFFICE SERVICES AND RELATED TECHNOLOGY | |

## ACCREDITED WESTERN ASSOCIATION OF SCHOOLS AND COLLEGES

| | | |
|---|---|---|
| JUN. 28, 2002 | BUSINESS MANAGEMENT COURSE | 3 UNITS |
| JUL. 29, 2004 | SMALL BUSINESS AND LIGHT INDUSTRY | 3 UNITS |
| NOV. 09, 2004 | BUSINESS MATH | 3 UNITS |
| DEC. 15, 2004 | BUSINESS ENGLISH | 3 UNITS |

## COASTLINE COMMUNITY COLLEGE

| | | |
|---|---|---|
| DEC. 18, 2006 | LIBERAL ARTS DEGREE-THREE CREDITS SHORT | 57 UNITS |
| JUN. 10, 2007 | GRADUATE LIBERAL ARTS DEGREE | 72 UNITS |
| AUG. 20, 2007 | START BACHELOR'S DEGREE PROGRAM (CSU-SACRAMENTO) | |

## EMERGENCY MANAGEMENT INSTITUTE

| | | |
|---|---|---|
| NOV. 17, 2006 | 2006 COMPLETED (27) COURSES FOR CERTIFICATE | 540 HRS |

3

KURT ABRON #K-82005
CSP- SOLANO
BLDG.#21-J-6-U
P.O. BOX 4000
VACAVILLE, CA 95696-4000

State of California
Board of Parole Hearings
Post Office Box 4036
Sacramento, California 95812-4036

Dear Sir/Madam:

This is my tentative Parole Plan. These opportunities offer different variations of my Parole Plan which includes:

## HOUSING/EMPLOYMENT/EDUCATION

This plan will be utilized pending approval and directions from the Parole Division.

## HOUSING:

JAMES MARKURAS SOCIETY                          ATTN: FR. JOHN FREDRICK
588 SUTTER STREET # 903
SAN FRANCISCO, CA. 94102
(415) 749-0556

ST. EPHRAIM'S HOUSE                             ATTN: FR. NAZARIN
574 VALLEY STREET
SAN FRANCISCO, CA. 94131
(415) 821-3366

1715 STARVIEW DRIVE                             FAMILY HOME
SAN LEANDRO, CA. 94577
(510) 808-4106

## EMPLOYMENT:

PAROLEE EMPLOYMENT PROGRAM (PEP)                ATTN: MR. D. YEE
28 BOARDMAN PLACE
SAN FRANCISCO, CA. 94103
(415) 863-2323

SAN FRANCISCO SHEETMETAL                        ATTN: FRANK CUNEO
WORKERS UNION # 104
1939 MARKET STREET
SAN FRANCISCO, CA. 94103
(415) 431-1676

CONSORTIUM MANAGEMENT COMPANY                   FAMILY BUSINESS
1255 TREAT BOULEVARD SUITE 300
WALNUT CREEK, CA. 94597
www.consortiumco.com
Employer ID Number 20-1052885
California Corporation Number C2625303
California EDD Employer Account Number 265-8023-3

1

**OBIS CREDIT CODE 32**
CDC 1897M (04/00)

## CALCULATION WORKSHEET FOR INDETERMINATE PC SECTION 2931

This form is used to calculate the Minimum Eligible Parole Date (MEPD) for inmates serving indeterminate (ISL) terms eligible for credit per Penal Code (PC) Section 2931. (Note: Inmates convicted of murder committed on/after June 3, 1998 are ineligible for credit, per PC Section 2933.2.) ISL PC Section 2931 terms are entered into the Offender Based Information System (OBIS) as a Credit Code 32.

| Section A – Original MEPD Calculation | | Section B – Participation Credit (PC) | | | |
|---|---|---|---|---|---|
| 1. Start Date | 1-27-98 | 1. CDC Conduct Credit (Section A, Line 11) | | | |
| 2. Plus Time Imposed | + 15 yrs to Life | 2. Divide Line B-1 by 4, equals Participation Credit | * | | |
| 1311 + 654 + 17 | = 1-27-13 | Any fractions over 0.5 are rounded up and fractions under 0.5 are rounded down. When the fraction is exactly 0.5, the PC is rounded down and the BC is rounded up per DOM Section 73030.8.10. | | | |
| 3. Minus Pre/Postsentence Credit | 1982 | | | | |
|  | = 8-25-07 | Participation Credit Losses/Restorations | | | |
| 4. Minus Vested Credit (1/2 postsentence credit) | 8 | Date of CDC 115 | Loss | Restored | Net Loss |
|  | = 8-17-07 | | | | |
| 5. Plus Dead Time | + — | | | | |
| 6. Equals Maximum Eligible Parole Date | = 8-17-07 | | | | |
| 7. Minus Start Date (Line A-1) | - 1-27-98 | 3. Net PC Losses (cannot exceed Line B-2): | | | |
| 8. Equals days to serve | = 3489 | Section C – Behavior Credit (BC) | | | |
| 9. Minus Dead Time | - — | 1. Participation Credit (Section B, Line 2) | | | |
| 10. Equals Days Where Credit May Be Applied | = 3489 | 2. Multiply Line C-1 by 3, equals Behavior Credit | * | | |
| 11. Equals CDC Conduct Credit (divide Line A-10 by 3, round up) | = 1163 | Behavior Credit Losses/Restorations | | | |
| 12. Maximum Eligible Parole Date (Line A-6) | 8-17-07 | Date of CDC 115 | Loss | Restored | Net Loss |
| 13. Minus CDC Conduct Credit (Line A-11) | - 1163 | | | | |
| 14. Equals Original MEPD | = 6-10-04 | 3. Net BC Losses (cannot exceed Line C-2): | | | |

| Section D: Calculating Adjusted MEPD | |
|---|---|
| Original MEPD (from Section A, Line 14) | 6-10-04 |
| Plus Net PC and BC Losses (Line B-3 plus Line C-3) | + — |
| Equals Adjusted MEPD (cannot exceed Maximum Eligible Parole Date) | = 6-10-04 |
| Maximum Eligible Parole Date (from Section A, Line 6) | |

| CALCULATED BY (Name and Title) | K. Top, CCII/P | DATE | 12-8-06 |
|---|---|---|---|
| INMATE'S NAME | Abron | CDC NUMBER | K82005 | LOCATION | CSP-S/2 |

*Line B-2 plus Line C-2 must equal Line A-11/B-1.

Next Lifer Hearing Sub #1 2/2007 calendar

Petitioner prays that this Writ of Habeas Corpus is granted by this Honorable Court.


Dated___June 3, 2008___                    Signed _Kurt F. Abron_

                                                    Kurt F. Abron

# PROOF OF SERVICE BY MAIL

## BY PRISONER "IN PRO PER"

I hereby certify that I am over the age of 18 years of age, that I am representing myself, and that

I am a prison inmate. KURT ABRON#K-82005

My prison address is:   California State Prison - Solano
Housing: 21-J-6-U
P.O. Box 4000
Vacaville, California 95696-4000

On the "*date*" specified below, I served the following document(s) on the parties listed below by

delivering them in an envelope to prison authorities for deposit in the United States Mail pursuant to

the "Prison Mailbox Rule":

Case Name: ABRON v. SISTO                       Case #:
(1) COPY OF HEARING TRANSCRIPTS
Document(s) Served:   (1) WRIT OF HABEAS CORPUS
(1) MOTION FOR APPOINTMENT OF COUNSEL
(1) NOTICE OF LODGEMENT OF EXHIBITS
IN SUPPORT OF PETITIONER"S WRIT OF HABEAS CORPUS
(1) APPLICATION TO PROCEED IN FORMA PAUPERIS

The envelope(s), with postage fully pre-paid or with a prison Trust Account Withdrawal Form

attached pursuant to prison regulations, was/were addressed as follows:

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVE
SAN FRANCISCO, CA 94102

I declare under penalty of perjury that the foregoing is true and correct. This declaration was

executed on MAY 28, 2008            , in Vacaville, California.
*"date"*

Signature: Kurt F. Abron

Printed Name: KURT F. ABRON